UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETSY ELLEN WESLEY, **Plaintiff,** v. DENIS MCDONOUGH and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, **Defendants.** | No. 21-CV-02948 Magistrate Judge Beth W. Jantz |

## ORDER

For the reasons discussed in the accompanying statement, Plaintiff's motion for leave to conduct limited discovery [24] is denied. A status hearing is set for 5/5/22 at 10:45am, to address whether the parties have any interest in settlement and/or to discuss the parties' plan for moving the case forward, which the parties should discuss between themselves ahead of time. To join the hearing, dial 888-273-3658 and enter access code 2217918.

## STATEMENT

In this administrative appeal, plaintiff Betsy Ellen Wesley challenges her termination as an emergency room physician employed at the Jesse Brown VA Medical Center. *See* Compl., Dkt. 1. Plaintiff alleges that despite positive performance ratings, her medical privileges were suspended, she was involuntarily placed on unpaid leave, and she was eventually removed from her position with the VA. *Id*. Plaintiff challenged her removal before the VA's Disciplinary Appeals Board, which upheld her termination, although it overturned 22 of the 31 specifications lodged against her. *Id*. ¶¶ 24-25. Plaintiff alleges that the Disciplinary Appeals Board upheld her removal based on two "Focused Professional Practice Evaluations" and an external review. *Id*. ¶¶ 24-28. In a subsequent filing, plaintiff indicated that she was terminated because her error rate with respect to the quality and timing of entries into patient charts exceeded a 5% standard, but that the VA never provided a meaningful justification for its use of that 5% standard. *See* Pl's Mot. for Leave to Conduct Limited Discovery ("Mot."), Dkt. 24 at 2. Plaintiff alleges that the VA did not offer any testimony in support of the 5% error rate standard it employed, and it refused to hear her proposed witness regarding the appropriate standard. Compl. ¶¶ 27-28.

Count One of plaintiff's complaint had alleged that plaintiff's pay was improperly suspended without due process during the period between the suspension of her medical privileges and her eventual removal, but the District Judge dismissed Count One on February 3, 2022. *See* Dkt. 26. Plaintiff's remaining count is an administrative appeal of her removal, pursuant to 38 U.S.C. § 7462.

Plaintiff now moves for leave to conduct limited discovery, notwithstanding the fact that her remaining count is an administrative appeal for which discovery is not typically permitted. *See* Mot., Dkt. 24. Plaintiff's motion maintains that the VA used an error rate standard of 5% to evaluate plaintiff's entries into patient charts, but that the physician responsible for plaintiff's removal, Dr. Sarah Unterman, testified that she did not know the basis for the 5% error rate standard other than that it had been used at the Jesse Brown VA Medical Center in the past. *Id*. at 2. According to plaintiff, defendants' use of the 5% error rate standard—based only on Dr. Unterman's testimony that it had been previously used by the facility—means that the VA "indirectly considered her colleagues' error rate" as a key component of the basis for her removal. *Id*. at 4. Plaintiff also maintains that the VA directly considered her colleagues' record keeping error rate because among the factors the VA employed in determining plaintiff's penalty (known as the *Douglas* factors) was "[t]he consistency of the penalty with those imposed upon other employees for the same or similar offenses." *Id*. at 3-4. Plaintiff accordingly now seeks leave to request "a random sample of 50 cases each for at least three emergency medicine physicians working in the same conditions as [plaintiff] (night shift)." *Id*. at 5.

Plaintiff's motion is denied, for the following reasons. As an initial matter, 38 U.S.C. § 7462 provides for judicial review of VA Disciplinary Appeals Board decisions. Akin to the Administrative Procedure Act ("APA"), § 7462 requires the Court to "set aside any agency action, finding, or conclusion found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2); *cf.* 5 U.S.C. § 706 (Administrative Procedure Act). As one court assessing § 7462 explained, "the standards specified in § 7462(f)(2) are similar to, although not identical to, the standards for review of an administrative decision under [the Administrative Procedure Act]." *Kreso v. Shinseki*, No. 11-CV-02378-REB-MJW, 2011 WL 6413828, at *2 (D. Colo. Dec. 21, 2011). "More important, the procedures necessary to resolve the plaintiff's § 7462 claim are essentially the same as the procedures necessary to resolve a claim under the APA." *Id*. And "[g]enerally, discovery is not appropriate for claims brought under the APA since review of an agency's decision is confined to the administrative record." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1081 (7th Cir. 2016).

Citing *New York v. United States Dep't of Com.*, 351 F. Supp. 3d 502, 632 (S.D.N.Y.), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York*, 139 S. Ct. 2551, 204 L. Ed. 2d 978 (2019), an APA case, plaintiff argues that this case inheres certain exceptions to the general rule that discovery is not permitted in administrative appeals. The *New York* court explained that the "whole administrative record" mandated by the APA "consists of all documents and materials directly or indirectly considered by agency decision-makers," including "evidence contrary to the agency's position." *Id*. That court laid out four circumstances in which fact finding beyond the record compiled and submitted by the agency may be permissible, however. *Id*. at 632-34. First, "where it appears that the administrative record designated by the agency is *not* the 'whole record' that was before the agency decisionmakers at the time of decision, a court may order that the record be *completed*." *Id*. at 632 (emphasis in original). Second, "a court may allow parties to *supplement* the record with additional material to provide, for example, background information." *Id*. at 633 (internal quotation marks omitted). This exception applies where

2

"supplemental material will be helpful in understanding the problem faced by the agency and the methodology it used to resolve it, as in highly technical areas." *Id*. (cleaned up). Third, "a court may consider such 'supplemental' materials to evaluate whether an agency failed to consider all relevant factors, ignored an important aspect of the problem, or deviated from established agency practices." *Id*. Fourth and finally, "courts reviewing the substantive validity of agency action may consider additional material beyond the administrative record — extra-record material going to the reasons for the agency's action — where there has been a 'strong showing' that the agency has acted in bad faith." *Id*. at 634. Defendants do not dispute the propriety of the exceptions outlined in *New York*, instead arguing that none of them apply here. (Resp. at 4-5.) Accordingly, the Court will evaluate plaintiff's motion based on the *New York* framework.

Plaintiff argues that the first two *New York* exceptions are applicable—(1) that plaintiff is entitled to "complete" the administrative record with information that the agency must have considered, and (2) that discovery should be permitted to supplement the record because the case involves "highly technical" issues involving "the details of medical record-keeping." Neither argument is availing, however.

With respect to the first *New York* exception, plaintiff contends that she should be permitted to "complete" the administrative record, which in her view includes records sufficient to determine her colleagues' error rates. But even *New York*—relied on heavily by plaintiff—explains that courts may order "completion" of the record only where "a challenger shows that materials exist that were ***actually considered*** by the agency decision-makers but are not in the record as filed," or where the challenger "has made a prima facie showing that the agency excluded from the record evidence adverse to its position." *New York*, 351 F. Supp. 3d at 632. Plaintiff argues that she is entitled to the documents she requests because the VA must have actually considered her colleague's record keeping error rates in removing her. But plaintiff provides no basis to conclude that the VA considered ***actual medical records*** that will reflect her colleagues' record-keeping error rates, which she now seeks. Indeed, Plaintiff concedes that she is seeking discovery to correct the "absence of information," (Mot. at 1), and later admits that she would need to work out with the defendants what files would even be reviewed if her motion were granted, (Mot. at 5). Furthermore, one of her positions appears to be (and the testimony she cites suggests) just the opposite—that the agency selected its error rate standard only because the facility had used that 5% ***standard*** in the past, and ***not*** based on any assessments of actual physicians' record-keeping error rates via review of medical records. *See* Mot. at 4; Mot. Ex. E at 30-31 ("Q. Who determined that five percent? Was that a national issue or is that something that you just pull out of your hat? A. No, that's a standard that we've used at this facility for every FPPE for cause. I don't know if it's also a national standard, to be honest."); 69-70 ("Q. And how did you get the number 95 percent? I'm sorry, not you, but the document describes the cut-off level, percent not meeting the standard, which was greater than five percent. So, how did the number 95 come up? A. That's the standard that we've used at our facility for quite some time and it's supported by the medical staff affairs office.").

Nor does the VA's supposed consideration of the consistency of plaintiff's penalty with other employees' penalties (or lack thereof) for similar offenses or error rates mean that actual medical records that would reflect her colleagues' record-keeping error rates became part of the administrative record or were otherwise considered by the agency. In purporting to assess the

3

*Douglas* factors, the VA's removal decision checked a box that read "[n]o other employee under your supervision has committed offenses similar to those alleged," and thus noted that the consistency of plaintiff's penalty was neither an aggravating nor a mitigating factor in plaintiff's removal. Mot. Ex. B. Plaintiff therefore provides no basis to conclude that the VA actually assessed medical records that would reflect her colleagues' record-keeping error rates in arriving at its conclusion, such that those records became part of the administrative record or were otherwise considered by the agency in this case. Plaintiff's position rather appears to be that the VA's consistency assessment was arbitrary, unsupported by substantial evidence, or completed without required procedures because the VA did not conduct an appropriate evaluation of her colleagues' error rates. This position is in contrast to a circumstance in which the agency did *in fact* review the medical records that she now seeks and that would have reflected those error rates, and nonetheless excluded them from the administrative record, which as we have explained is not the case here. Nor has plaintiff cited to any evidence making a prima facie showing that the VA excluded the requested records from its review because the records might have been adverse to the agency's position.

Accordingly, plaintiff has not justified a need to "complete" the administrative record with the medical records she now seeks. As discussed in greater detail below, and as the defendants argue, (Resp. at 3-4), plaintiff's remedy with respect to the foregoing issues is not to seek discovery in this Court, but instead to argue that the VA's decision should be set aside under 38 U.S.C. § 7462(f)(2) so that a more thorough or procedurally proper agency proceeding can be conducted.

Plaintiff also makes a cursory argument with respect to the second *New York* exception, (Mot. at 5), but this also is not a case where new discovery is appropriate to "supplement" the record to provide background information that will help the Court understand a "highly technical" issue. *See New York*, 351 F. Supp. 3d at 633; *cf. Ass'n of Pac. Fisheries v. E.P.A.*, 615 F.2d 794, 811 (9th Cir. 1980) (considering statistical studies assessing effluent guidelines in the seafood processing industry because they were "helpful in understanding the problem faced by the Agency and the methodology it used to resolve it"). Such information is occasionally discoverable during administrative appeals "to illuminate a complex record and to help the court better understand the issues involved." *New York*, 351 F. Supp. 3d at 633. But extra-record discovery on appeal is not justified on this basis where a party simply wishes to use it "as a new rationalization either for sustaining or attacking the agency's decision." *Id*. (cleaned up) (quoting *Pac. Fisheries*, 615 F.2d at 812-13). Here, beyond noting that "the issues in the instant case are highly technical in nature because they deal with the details of medical record-keeping," (Mot. at 5), plaintiff does not explain *how* medical records that will reveal her colleagues' error rates will help the Court better understand any complex issues that would be germane to the outcome of the appeal. This is not a case in which Plaintiff is arguing that the agency got the details of medical record-keeping incorrect. Rather, it appears plaintiff seeks the records to try to prove that her error rate was in line with her colleagues' error rates, or that the VA applied the 5% standard inconsistently or arbitrarily, *i.e.*, to establish separate reasons to attack the VA's decision. New discovery to "supplement" the administrative record is not appropriate on this basis.[1]

---

[1] It is unclear whether plaintiff also argues about the third *New York* exception: that discovery to "supplement" the record is necessary "to evaluate whether an agency failed to consider all relevant factors, ignored an important aspect of the problem, or deviated from established agency

4

As noted above, and as defendants argue, (Resp. at 3-4), this is not to say that plaintiff lacks a remedy for any alleged failure by the VA to appropriately consider her colleagues' error rates or the medical records underlying them. She may argue that the VA's failure to support the error rate standard by which plaintiff's performance was measured—or otherwise consider her colleagues' error rates or the underlying records reflecting those rates—renders the VA's action arbitrary or capricious, unsupported by substantial evidence, or obtained without procedures required by law, rule, or regulation having been followed. 38 U.S.C. § 7462(f)(2). If, in responding to plaintiff's arguments, defendants suggest that the VA relied on information outside of the produced administrative record to support the 5% error rate standard, discovery to "complete" the administrative record may become appropriate at that point. *New York*, 351 F. Supp. 3d at 633; *see also Citizens for Appropriate Rural Roads*, 815 F.3d at 1081-82 (noting discovery may be appropriate in APA cases where plaintiff makes "a significant showing that it will find material in the agency's possession indicative of . . . an incomplete record"). But on the record before the Court, plaintiff has not established that she is entitled to the discovery she now seeks.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to conduct limited discovery is denied.

Date: 4/18/2022

_____
BETH W. JANTZ
United States Magistrate Judge

---

practices." *New York*, 351 F. Supp. 3d at 633-34. In any case, for the same reasons outlined above, plaintiff has not established that the requested medical records would help the court develop an "adequate understanding of what is relevant, important, or settled in the field where the agency decision was made." *Id*. (cleaned up). Plaintiff does not seek supplemental materials to identify factors the agency failed to consider; indeed, plaintiff has *already identified* the issue she believes the agency did not properly consider (her colleagues' error rates and/or the records underlying those rates). Plaintiff's requested discovery is thus not directed at elucidating for the Court the relevant considerations for an agency's evaluation of emergency room physicians; it is instead designed to show that *if* the agency *had* properly evaluated plaintiff's colleagues' error rates, the agency would have been required to rule in plaintiff's favor. As the Court has noted throughout this decision, plaintiff's remedy is to seek remand to the VA for a procedurally sound hearing under 38 U.S.C. § 7462(f)(2).

5